UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

In Re                                                    Case No. 11-14009-CLB
                                                         Chapter 11

NATIVE WHOLESALE SUPPLY COMPANY

                              Debtor
EIN:  16-1609830


-------------------------------------------------------------

NATIVE WHOLESALE SUPPLY COMPANY
10955 Logan Road
Perrysburg, New York 14129

                              Plaintiff
                                                         A.P. No. 11-01123-CLB

        v.

U.S. CUSTOMS AND BORDER PROTECTION
6650 Telecom Drive
Indianapolis, Indiana  46278

                              Defendant
-------------------------------------------------------------

**AMENDED**
**COMPLAINT FOR A PERMANENT INJUNCTION AGAINST DEFENDANT**

        Plaintiff, Native Wholesale Supply Company, Debtor and Debtor-in-Possession, by and

through its counsel, Gross, Shuman, Brizdle & Gilfillan, P.C., as and for its Complaint against

U.S. Customs and Border Protection ("U.S. Customs"), respectfully alleges as follows.

**NATURE OF ACTION**

        This is an action seeking a permanent injunction against U.S. Customs pursuant to

11 U.S.C. §105 enjoining U.S. Customs from requiring the simultaneous posting or "stacking" of

a new bond by the Debtor for $12,400,000 solely to secure payment of customs duties and

importation taxes while requiring the Debtor to maintain its current bond in the amount of $9,300,000 also securing the payment of customs duties and importation taxes.

The Debtor is current in the payment of all of its customs duties and excise taxes and other obligations, has a positive cash flow, is profitable and intends to propose a reorganization plan to repay creditors over time in full with interest; it does not, however, have the financial ability to immediately post two bonds simultaneously totaling $21,700,000. Imposing this requirement will cause the Debtor to cease operations and therefore thwart its reorganization effort. An injunction to prevent what is referred to in the industry as "bond stacking" is critical to the Debtor's survival and successful reorganization. Irreparable harm will result not only to the Debtor, but to its creditors if an injunction is not issued.

The injunction sought seeks only to preserve the status quo. Without the injunction, the Debtor's business will be destroyed along with its reorganization effort.

## JURISDICTION AND VENUE

1.      On November 21, 2011 (the "Commencement Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") and it is managing its property and its business as a debtor-in-possession.

2.      The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§1331 and 1334(b) and (e).

3.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(K) and (E).

4.      Venue in this district is proper pursuant to 28 U.S.C. §1409(a) because this is the district where the Debtor's bankruptcy case is pending.

5.      This proceeding has been brought in accordance with Fed. R. Bankr. P. 7001.

6.      The statutory bases for the relief requested herein is 11 U.S.C. §105.

## THE PARTIES

7.      Plaintiff is the Debtor, Native Wholesale Supply Company ("NWS"). NWS is a corporation chartered by the Sac and Fox Tribe of Oklahoma and maintains its offices on the Seneca Cattaraugus Indian Territory in Gowanda, New York.

8.      Defendant, U.S. Customs, is part of the United States Department of Homeland Security.

## BACKGROUND

9.      The Debtor is engaged in the business of importing cigarettes and other tobacco products from Canada (the "Goods") and sells them to third parties within the United States.

10.      The Goods imported by NWS are manufactured by Grand River Enterprises Six Nations, Ltd. ("Grand River") on the Grand River Reserve in Canada.

11.      The Goods are subject to customs duties payable to the United States pursuant to the Tariff Act of 1930, as amended, and in particular 19 U.S.C. §1623 and 19 CFR 113.62.

12.      Pursuant to 19 U.S.C. §1623, Defendant U.S. Customs is authorized to require importers to require the posting of bonds or other security for the protection of the revenue in the form of customs duties payable to the United States on the importation of product subject to such customs duties.

13.      The purpose of the bond is to protect the pecuniary interest of the United States in the collection of such customs duties and such other amounts that may be payable to the United States in connection with importation of the Goods.

- 3 -

14. In or about 2010 U.S. Customs fixed the amount of the bond required to be posted by the Debtor in the amount of $9,300,000.

15. NWS thereafter obtained a $9,300,000 importers customs entry bond, effective December 9, 2010 that was required under 19 U.S.C. §1623 in order for NWS to continue to import the Goods into the United States (the "Customs Bond"). A copy of the Customs Bond is annexed hereto as Exhibit A.

16. The Customs Bond provides that it "remains in force for one year beginning with the effective date and for each successive annual period, or until terminated", thus providing for automatic renewals until termination.

17. The Customs Bond was issued by Capitol Indemnity Corporation.

18. The purpose of the Customs Bond is to secure payment of the duty, tax or importation charges arising from NWS's importation of the Goods.

19. On December 16, 2009, Royal Bank of Canada ("RBC") issued an irrevocable letter of credit (the "LOC") in the amount of $8,200,000 to secure the Customs Bond. The LOC is fully collateralized by cash deposited by Grand River with RBC.

20. NWS is current in its payment of all of its customs duties, excise taxes and/or other taxes arising from importation of the Goods which accrue at the approximate rate of $2,600,000 per week.

21. On October 28, 2011, NWS received a letter from U.S. Customs notifying NWS that it must terminate its current Customs Bond in the amount of $9,300,000 "within 30 days from the date of this letter . . . and replace it with a new continuous bond with a limit of liability

- 4 -

not less than $12,400,000 (the "October 28th Letter"). A copy of the October 28th Letter is attached hereto as Exhibit B.

22.     To terminate the $9,300,000 Customs Bond and post a new $12,400,000 bond, the Debtor would be required to "stack" the bonds and to secure the stacked bonds, increase the LOC to $21,700,000 while the government enjoys a 180 day time frame to verify/finalize payment of all of NWS's customs and excise tax obligations which arose during the $9,300,000 bond period (the "Verification Period"). The $9,300,000 Customs Bond must remain in place during the Verification Period.

23.     Upon information and belief, because NWS is and has always kept current with respect to all excise and customs obligations secured by the Customs Bond, U.S. Customs does not require a 180 day Verification Period. Upon information and belief, U.S. Customs could make the necessary verification determination to release the $9,300,000 Customs Bond within two weeks avoiding the necessity of stacking the bonds, and in fact did so the last time the Debtor was required to increase its Customs Bond in December of 2010.

24.     Upon information and belief, the sole basis for the U.S. Customs' decision to increase the Debtor's bond amount from $9,300,000 to $12,400,000 is due to an increase in the volume of Goods imported by the Debtor.

25.     NWS does not dispute that the volume of Goods it imports has increased; however, several factors that must be considered by U.S. Customs indicate or mitigate in favor of not increasing the bond – or not increasing to the extent of an additional $3,100,000. These factors include burden, as well as *inter alia* the fact that Grand River will soon be using an additional importer, which will have the effect of decreasing NWS liability in the next twelve

- 5 -

months.  In any event, NWS, through its counsel, has offered to supplement its existing bond with a bond for an additional $3,100,000 such that the combined level of liability on the bonds in favor of U.S. Customs would have a limit of liability of not less than $12,400,000[1] or, alternatively, post a replacement bond in the total amount of $12,400,000 to take effect after liquidation of the entries under the current bond and release of the current bond from any liability.  See letter dated November 28, 2011 from Debtor's counsel to U.S. Customs, annexed hereto as Exhibit C, in which such an offer was made.

26.     NWS has the financial ability and support to increase the Bond and the LOC (together with Grand River's cash support) by $3,100,000, the difference between the $12,400,000 demanded and $9,300,000.

27.     In a matter wholly separate from the excise and customs duties, NWS is involved in an ongoing dispute with the United States Government regarding multi-million dollar assessments made under the Fair and Equitable Tobacco Reform Act of 2004 and the Tobacco Transition Payment Program (the "Disputed Assessment").  These Disputed Assessments are not subject to the Bond, however.

28.     The issues pertaining to the Disputed Assessment have resulted in two lawsuits, subsequently consolidated, now pending in the United States District Court for the Western District of New York before Judge Curtin (United States of America vs. Native Wholesale Supply Company 08-CV-850).

---

[1] NWS does not necessarily agree that the amount of the bond should be $12,400,000 and it therefore reserves all rights with respect to challenging that calculation.

Doc # 352073.6
Case 1-11-01123-CLB,   Doc 15,   Filed 01/06/12,   Entered 01/06/12 12:52:10,
Description: Main Document  , Page 6 of 9

29.     Other than the Disputed Assessment, certain pre-petition obligations it obtained authority to pay on the Commencement Date, and certain disputed claims[2], the Debtor was current on all of its obligations on the Commencement Date.  In fact, repayment of the Disputed Assessment triggered the bankruptcy filing and if the Debtor ceases operations because it is required to post two bonds simultaneously in the total amount of $21,700,000, the Disputed Assessment will not be repaid.

## COUNT I.

### U.S. CUSTOMS' EFFORT TO REQUIRE THE DEBTOR TO TERMINATE THE BOND AND POST A LARGER BOND IS IN VIOLATION OF THE AUTOMATIC STAY

30.     Plaintiff repeats and realleges each of the preceding paragraphs as though fully set forth herein.

31.     Pursuant to 11 U.S.C. §362(a)(1), the filing of a petition under Title 11 operates as a stay of "the . . . continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . ."  11. U.S.C. §362(a)(1).

32.     Defendant U.S. Customs' determination and demand  notice requiring that NWS terminate the $9,300,000 bond and file a larger bond of $12,400,000 as set forth in the October 28th Letter is a "proceeding" within the meaning of 11 U.S.C. §362.

33.     Any attempt to require or impose termination of the Customs Bond, or a determination that the current bond is insufficient, or requiring the Debtor to post a larger bond after the filing is a violation of the automatic stay imposed under 11 U.S.C. §362.

---

[2]  These disputed claims are essentially claims asserted against the Debtor in State Court lawsuits which the Debtor intends to remove to the Bankruptcy Court.

Doc # 352073.6

34.     Any attempt to require termination of the Customs Bond or to make a determination that the current bond is insufficient after the filing of the petition is unwarranted and unlawful.

35.     In order to protect the Debtor and its operations, which requires the continuation of the Customs Bond, the Debtor requests a determination by this Court that the U.S. Customs post-petition efforts to require or impose the termination of the Customs Bond or to make a determination that the bond amount is insufficient is a violation of the automatic stay and that any such further action to terminate or to otherwise facilitate the termination of the Customs Bond be enjoined under 11 U.S.C. §105.

## COUNT II.

### ALLOW THE DEBTOR TO INCREASE THE BOND BY $3,100,000

36.     Plaintiff repeats and realleges each of the preceding paragraphs as though fully set forth herein.

37.     The Debtor cannot operate without an importers customs entry bond.

38.     The Defendant, U.S. Customs' demand for "bond stacking" will require the Debtor to maintain two bonds simultaneously, which is unreasonable and if enforced, will result in the Debtor ceasing operations.

39.     The Debtor is able to increase the current bond by $3,100,000, the amount demanded by U.S. Customs in the October 28th Letter to provide security for ongoing payment of the Debtor's tax obligations.

40.     The Debtor is current on all of its obligations (except for the Disputed Assessment), which it intends to repay in full with appropriate interest in its reorganization plan.

- 8 -

41.     Pursuant to 11 U.S.C. §105, the Court has the power to issue an injunction enjoining U.S. Customs from requiring the simultaneous posting or "stacking" of a new bond by the Debtor for $12,400,000 and allowing the Debtor to increase the current Customs Bond by $3,100,000.  A request to issue such an injunction is hereby requested.

WHEREFORE, the Plaintiff prays that the Court issue an injunction under 11 U.S.C. §105 1) commanding that NWS's subsisting $9,300,000 Customs Bond be maintained; 2) ordering U.S. Customs to immediately cease, and that they hereafter be enjoined, from taking any steps to undermine or terminate the subsisting $9,300,000 Customs Bond; 3) enjoining U.S. Customs from requiring the simultaneous posting or "stacking" an additional Customs Bond by NWS for $12,400,000 provided that NWS supplements the subsisting Customs Bond amount by $3,100,000; and 4) providing for such other and further relief as is just.

Dated:     Buffalo, New York
           January 6, 2012

                                        GROSS, SHUMAN, BRIZDLE &
                                          GILFILLAN, P.C.


                              By:     s/ Janet G. Burhyte
                                      Robert J. Feldman
                                      Janet G. Burhyte
                                      *Attorneys for Debtor/Plaintiff,*
                                      *Native Wholesale Supply Company*
                                      465 Main Street, Suite 600
                                      Buffalo, New York   14203
                                      Tel: (716) 854-4300

- 9 -